IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANTONIO and MARIA MORENO | § | |
| | § | |
| v. | § | A-06-CA-012 LY |
| | § | |
| W.R. DAVIS PRODUCE, INC., et al. | § | |

## ORDER

Before the Court are Plaintiff's Objections and Opposed Motion to Exclude Expert Testimony of Trooper Rubel James Salaz and Request for Oral Hearing (Clerk's Doc. No. 16) and Defendants' Motion to Exclude Proposed Expert Testimony of Robert Summers, Mike Tomforde, and Franklin Staats (Clerk's Doc. No. 21).

## BACKGROUND

This case arises from a traffic accident north of Fredericksburg, Texas. Plaintiffs' automobile collided with Defendant W.R. Davis Produce Inc.'s eighteen-wheel tractor trailer driven by Defendant William Munnin. Munnin told James Salaz, the Texas State Trooper who first arrived at the scene, that he was driving south on FM 965 – a winding road – when he saw Plaintiffs' car drive past him going northbound, and then heard a loud bang, at which point he pulled his truck over to the side of the road and saw Plaintiff's badly damaged car off of the right side of the road. Plaintiffs' story of course differs. Plaintiffs contend that on a curve of FM 965, the trailer of Defendants' truck crossed the double-yellow line into Plaintiff's lane (the northbound lane) and struck Plaintiff's vehicle.

In any event, Plaintiff Antonio Moreno suffered serious injuries from the collision and has filed suit., along with his wife, to recover for those injuries. The first motion before the Court at this juncture requests the Court to exclude Salaz's expert testimony – Salaz testified at his deposition that

he believed that it was Plaintiffs' vehicle that crossed the center line and struck Defendants' truck Plaintiffs contend that Salaz does not meet the requisite qualifications to testify as an accident reconstruction expert.  The second motion is Defendants' request that a number of Plaintiffs' fact witnesses be limited in the scope of their testimony and not be allowed to give opinions as to accident reconstruction, causation, and fault.

## ANALYSIS

Under Federal Rule of Evidence 702, expert testimony is admissible when it will assist the trier of fact.  Federal Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), (concluding that the germane inquiry when determining admissibility of expert testimony is whether the testimony would assist the jury's understanding of the evidence). *Daubert* makes clear that the district court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 591.

In *Daubert*, the Supreme Court instructed district courts to function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury.  *See Daubert*, 509 U.S. at 590-93.  District courts must be assured that the proffered witness is qualified to testify by virtue of his "knowledge, skill, experience, training, or education." FED. R. EVID. 702.  A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163 F.3d 935, 937 (5 th Cir. 1999).

**1.     Plaintiff's Motion**

*Wilson v. Woods* is the Fifth Circuit's most extensive exegesis on accident reconstruction experts. 163 F.3d at 937. There, the court excluded an accident reconstruction expert who had a masters degree in mechanical engineering. *Id.* The trial court noted that the expert was very qualified in the fire and arson analysis field, but was not qualified in his "new" field of accident reconstruction. The Circuit affirmed, noting that the expert: (1) had taught college, but never held professorial rank; (2) had never taught accident reconstruction; (3) had no degree or certification; (4) had not completed requirements for certification by Association of Accident Reconstructionists; (5) one court had refused to let him testify, although he testified as an expert in other cases; (6) had never conducted studies or experiments; (7) did not take measurements or collect data from the scene, nor examine tires or mechanical parts; (8) based his calculations on generic data published by NHTSA; and (9) was unable to show relevant expertise. *Id.*

In *Wilson*, the proposed, and eventually excluded, expert had a B.S. and M.S. in mechanical engineering. *Id.* In this case, Salaz does not have a college diploma of any kind, but rather is a high school graduate. In *Wilson*, the proposed expert had taught college level courses. *Id.* Here, Salaz has no academic credentials: he has never taught a class on accident reconstruction and has never authored a paper in the field. In *Wilson*, the proposed expert was criticized by the Court for "not tak[ing] any measurements or collect[ing] any data from the accident scene." *Id.* Here, Salaz testified that "[t]here was no measurements taken. There was no calculations made . . . ." *See* Defendants' Response, Exh.1 at 71, 126. He also made no calculations nor took any photographs related to his opinion that gouge marks were made by Plaintiffs' car, which was the basis for his conclusion regarding the location of the collision. *Id.* at 149-50. (Salaz based his testimony

3

primarily on the gouge marks and the "debris field . . . the fluid disperson . . ." *id.* at 45-46, although he had to rely on photographs taken by others at the scene to recall the details of these issues, as he did not make any measurements at the time of the collision.) Finally, in *Wilson* the proposed expert had no certificate for accident reconstruction. Here, Salaz has no certificate in accident reconstruction, but rather is certified by DPS as an accident investigator, one level below an accident reconstructionist. *See id.* at 120. Indeed, when DPS needs to conduct a full scale reconstruction (*i.e.*, when there has been a traffic fatality), Salaz is not permitted to conduct the reconstruction because he is not properly certified under DPS procedures to do so.

In response to the Plaintiff's motion, Defendants argue that Salaz is qualified and his opinions are sufficiently reliable to permit their admission. They contend that his conclusion regarding the gouge mark and its explanatory power as to the cause of the accident "was based upon sound scientific analysis." *See* Defendants' Response at 7. And that, in a way, is entirely the point: there was no scientific analysis done here – "sound" or otherwise. There was no empirical data collected and considered; no formulation of a hypothesis; no subjecting of that hypothesis to the empirical facts to determine its truth or falsity.

The clincher on this motion, however, is DPS's own certifications. As already noted, Salaz's credentials certainly qualify him to *investigate* an accident (that is, after all, the essence of his job by virtue of being a Trooper). They do not, however, qualify him as an accident reconstruction expert. It is difficult for the Defendants to offer someone as an expert in a lawsuit when that individual's own employer has not given him the credential or certification necessary to demonstrate

that expertise.[1]  For this reason, the Plaintiff's motion to exclude Trooper Salaz's expert testimony is GRANTED.

### 2. Defendant's Motion

Defendants' motion seeks to exclude the testimony of three of Plaintiffs' fact witnesses. Defendants contend that three witnesses – Robert Summers, Mike Tomforde, and Franklin Staats – were designated as fact witnesses, but the substance of their testimony is such that they are *de facto* expert witnesses.  They are requesting that the Court exclude their testimony insofar as it concerns fault, accident reconstruction, and causation of the accident.  For example, Defendants' point out, the description of Summers's testimony in Plaintiffs' Designation of Potential Witnesses, Testifying Experts and Proposed Exhibits, Exh. D, states that Summers "is a non-retained witness who has special training and expertise in accident investigation and accident reconstruction." *See* Exh. D at 3. It goes on further stating that Summers observed the scene – noting the skid marks, gouge marks, and other aspects of incident – and took photographs. *Id*.  Along these same lines, Tomforde – Antonio Moreno's employer – also went to the scene of the accident and saw the skid marks. *Id*.

---

[1] It is worthwhile to note that Salaz has testified before as an accident reconstruction expert in Texas state court.  And Defendants cite a number of Texas state cases where law enforcement officers with qualifications similar to Salaz's were allowed to testify as experts.  These cases are not dispositive for a couple of reasons.  First, the one case where Salaz testified as an expert was a fatality case, and, as he testified, in fatality cases there are full DPS accident investigation reconstructions (complete with measurements, calculations and data gathering) done – known in the law enforcement jargon as a "total station survey" – something Salaz did not do here.  Further, it was pointed out at the hearing that in that case, Salaz acted as an accident investigator, working under the supervision of DPS accident reconstructionists, and his testimony was limited to his role as an investigator. Perhaps more importantly, where the issue is one governed by the Federal Rules of Evidence, and the Fifth Circuit has set out an analytical framework, as it has here, *see Wilson*, 163 F.3d at 937-38, the Court must follow federal law as opposed to cases applying Texas law.

Finally, Staats apparently came upon the accident scene soon after it happened, but did see the it transpire.

At the hearing on June 6, 2007, the Plaintiffs conceded the point and stated that they would only offer the witnesses for their factual observations. Defendants responded that they believed the issue was moot as a result of the concession, but pointed out that the witnesses should not be permitted to respond to any questions seeking their opinions regarding such things as what caused any marks in the road or similar matters. Based on Plaintiffs' statement that they intend to only present fact testimony from these witnesses, the Court will GRANT Defendants' motion, and the witnesses shall be permitted only as fact witnesses. The Court will leave it up to the trial judge to resolve any specific issues that may arise at trial regarding any particular question presented to these witnesses.

## CONCLUSION

Based on the foregoing, the Court will **GRANT** Plaintiffs' Objections and Opposed Motion to Exclude Expert Testimony of Trooper Rubel James Salaz and Request for Oral Hearing (Clerk's Doc. No. 16). Trooper Salaz may testify regarding his factual observations at the scene of the collision, but he may not offer expert testimony regarding the causation, accident reconstruction or fault. Further, the Court will **GRANT** Defendants' Motion to Exclude Proposed Expert Testimony of Robert Summers, Mike Tomforde, and Franklin Staats (Clerk's Doc. No. 21) as set forth above.

SIGNED this 14th day of June, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE